**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., § § § § | |
| Plaintiff, § § | Case No. 3:15-cv-0401-N-BG |
| GMAG LLC, MAGNESS SECURITIES, LLC, GARY D. MAGNESS, and MANGO FIVE FAMILY, INC., IN ITS CAPACITY AS TRUSTEE OF THE GARY D. MAGNESS IRREVOCABLE TRUST § § § § § § | |
| Defendants. § | |

**BRIEF IN SUPPORT OF THE MAGNESS PARTIES'
MOTION TO EXCLUDE OR LIMIT TESTIMONY OF BILL POST**

**BALLARD SPAHR LLP**
Andrew J. Petrie (pro hac vice)
Lisa A. Lee (pro hac vice)
Rachel R. Mentz (pro hac vice)
1225 Seventeenth Street, Suite 2300
Denver, Colorado 80202-5596
Tel.:    303-292-2400
Fax:    303-296-3956
petriea@ballardspahr.com
leela@ballardspahr.com
mentzr@ballardspahr.com

**DYKEMA COX SMITH**
David Bryant
State Bar No. 03281500
1717 Main Street, Suite 4200
Dallas, Texas  75270
Tel.:    214-698-7800
Fax:    866-809-9916

Mark J. Barrera
State Bar No. 24050258
112 East Pecan Street, Suite 1800
San Antonio, Texas  78205-1521
Tel.:    210-554-5500
Fax:    210-226-8395
dbryant@dykema.com
mbarrera@dykema.com
ATTORNEYS FOR THE MAGNESS PARTIES

# TABLE OF CONTENTS

**Page**

SUMMARY ........................................................................................................................ 1

I.   THE COURT SHOULD EXCLUDE POST'S "EXPERT" TESTIMONY AS TO MATTERS RELATED TO THE MAGNESS PARTIES' ALLEGED "INSIDER" STATUS. ................................................................................................................ 3

   A.   The Proffered Testimony is Irrelevant and Unreliable, and Likely Would Mislead the Factfinder and Unfairly Prejudice the Magness Parties. ...................... 3

   B.   Post's Opinions on these Matters Are Based On Insufficient Data, No Reliable Principles or Methods, and Do Not Demonstrate A Reliable Application of Principles or Methods To This Case. ............................................... 6

II.  POST'S OPINIONS IMPERMISSIBLY CONFUSE WHAT THE MAGNESS PARTIES ACTUALLY KNEW WITH WHAT POST BELIEVES THEY COULD OR SHOULD HAVE KNOWN. ...................................................................................... 9

III. POST'S "EXPERT OPINION" THAT THE MAGNESS PARTIES' ACTIONS ESTABLISH THAT THEY HAD CONCLUDED SIBL WAS LIKELY A FRAUD AS OF OCTOBER 2008 IS A SPECULATIVE AND BASELESS ASSERTION HE IS ENTIRELY UNQUALIFIED TO MAKE. ................................................................. 13

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City of McComb*,
   No. 3:10CV617TSL-MTP, 2012 WL 1344025 (S.D. Miss. 2012), *aff'd in
   part, rev'd in part on other grounds*, 539 F. App'x 385 (5th Cir. 2013) ............................ 13, 14

*Burleson v. Tex. Dep't Criminal Justice*,
   393 F.3d 577 (5th Cir. 2004) ........................................................................................... 3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................. *passim*

*Factory Mut. Ins. Co. v. Alon*,
   705 F.3d 518 (5th Cir. 2013) ........................................................................................... 8

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................................................ 3

*Grede v. Bank of New York Mellon Corp. (In re Sentinel Mgmt. Group, Inc.)*,
   809 F.3d 958 (7th Cir. 2016) ......................................................................................... 10

*Hahn v. Love*,
   394 S.W.3d 14 (Tex. App. 2012) .................................................................................. 10

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) .................................................................................... 3, 4, 7

*Janvey v. Democratic Sen. Camp. Comm., Inc.*,
   793 F. Supp. 2d. 825 (N. D. Tex. 2011), *aff'd*, 712 F.3d 185 (5th Cir. 2013) ................. 12

*Knight v. Kirby Inland Marine, Inc.*,
   482 F.3d 347 (5th Cir. 2007) ....................................................................................... 3, 6

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999) ........................................................................................................ 7

*Loeffel Steel Prods, Inc. v. Delta Brands, Inc.*,
   397 F. Supp. 2d 794 (N.D. Ill. 2005) .............................................................................. 8

*Pan Am. Petroleum Corp. v. Verde Oil Co.*,
   367 F.2d 461 (5th Cir. 1966) ......................................................................................... 10

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) .................................................................................... 3, 6, 7

*Templeton v .O'Cheskey (In re Am. Housing Found.)*,
    785 F.3d 143 (5th Cir. 2015) ...................................................................................... 10

*United States v. Hicks*,
    389 F.3d 514 (5th Cir. 2004) ........................................................................................ 3

**Statutes**

Tex. Bus. & Comm. Code § 24.002(7) ................................................................................. 4

Tex. Bus. & Comm. Code § 24.002(7)(B) ............................................................................ 5

Tex. Bus. & Comm. Code § 24.005 ...................................................................................... 4

Tex. Bus. & Comm. Code § 24.005(b)(1) ............................................................................ 4

Tex. Bus. & Comm. Code § 24.006 ...................................................................................... 4

Tex. Bus. & Comm. Code § 24.009(a) .................................................................................. 5

**Other Authorities**

Fed. R. Evid. 403 .................................................................................................................. 2

Fed. R. Evid. 702 .......................................................................................................... 3, 6, 9

## BRIEF IN SUPPORT OF THE MAGNESS PARTIES' MOTION TO EXCLUDE OR LIMIT TESTIMONY OF BILL POST

Defendants GMAG, LLC, Magness Securities, LLC, Gary D. Magness, and Mango Five Family Investment, Inc., in its capacity as Trustee of the Gary D. Magness Irrevocable Trust (the "Magness Parties") file this Brief in Support of the Magness Parties' Motion to Exclude or Limit Testimony of Bill Post, and respectfully state as follows:

### SUMMARY

Bill Post is a licensed stockbroker, and has experience in investment management. Bill Post Deposition (7/20/2016) ("Post Dep.") at 16, 25-35 [App. 000003; App. 000004 - App. 000006]. He currently is a Managing Director and Co-National Practice Leader of Alvarez & Marsal Investment Management, LLC ("AMIM"), and has the title of Chief Investment Officer and Chief Compliance Officer of that entity. Bill Post Declaration (5/20/2016) ("Post. Decl.") at 1 [App. 000013]. Post was hired by the Receiver in March 2016. Post has never before testified in court as an expert witness, and had never been deposed as an expert witness before his July 20, 2016 deposition in this case. Post Dep. at 7-8 [App. 000002].

Post submitted a declaration regarding his opinions and conclusions relevant to this matter dated May 20, 2016 (the "Post Declaration") [App. 000013 – App. 000067], and a supplemental declaration dated June 6, 2016 (the "Post Supplemental Declaration") [App. 000068 – App. 000077]. In addition to stating Post's experience and qualifications, the two declarations refer extensively to a report submitted by Jeffrey Graves, an expert for the Magness Parties in this case, and attempt to rebut aspects of Mr. Graves' report. In the course of doing so, Post expresses a number of speculative and/or unfounded opinions.

The Magness Parties challenge Post's proffered opinion testimony, which is inadmissible. It does not comply with the legal standards for expert testimony set forth in Federal Rules of Evidence ("FRE") 701, 702, and 703, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

591 (1993). Going far outside of his area of expertise, Post's opinions are inherently unreliable and unsupportable as proper expert testimony. They cross the line to advocacy and serve only to voice the arguments of the Receiver's counsel. Moreover, the proffered testimony is inadmissible under FRE 403 because its probative value is substantially outweighed by the likelihood it would mislead the jury and unfairly prejudice the Magness Parties.

Post's proposed testimony stretches far beyond any expertise he may have. Post offers assertions, opinions, and conclusions regarding(a) whether "SIBL's presentations to the Magness Parties contained information not available to the public or other SIBL investors", in support of the Receiver's theory that the Magness Parties were "insiders" with respect to the Stanford Ponzi scheme; (b) what facts the Magness Parties knew or should have known related to SIBL and related Stanford Companies; (c) what Stanford representative Espy knew or should have known and whether that supposed knowledge was or should have been communicated to the Magness Parties or may be imputed to the Magness Parties; and (d) what facts and circumstances are "suspicious" or "concerning" circumstances (or what the Receiver argues are "red flags") to an investor or bank depositor. Post has no demonstrated expertise in any of these areas, has shown no basis in the facts of this case sufficient provide a basis for those opinions, and is not qualified to present "expert" testimony on those subjects. Indeed, Post significantly piggybacks on and parrots assertions by another expert witness hired by the Receiver, Karyl Van Tassel, whose opinions are inadmissible for the reasons set forth in a separate motion filed by the Magness Parties.

Moreover, Post's proposed testimony is based on no recognized, tested, or peer-reviewed methodology whatsoever. He merely cites alleged facts or speculation, and offers assertions and conclusions based on the narrow sets of supposed facts he identifies. He reached these conclusions without referring to any recognized literature in the applicable fields. This is classic

*ipse dixit* testimony: "I am an expert and I say that my conclusion is correct." A court should not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.' " *Burleson v. Tex. Dep't Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *accord Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible).

The Court, in its mandated role as gatekeeper, performs the essential function of ensuring that any expert opinion testimony a party proposes to present to the trier of fact is reliable. The proponent of that testimony must show that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Post's testimony in the specified areas does not meet these standards and must be excluded.

**I.   THE COURT SHOULD EXCLUDE POST'S "EXPERT" TESTIMONY AS TO MATTERS RELATED TO THE MAGNESS PARTIES' ALLEGED "INSIDER" STATUS.**

"The proponent of expert testimony . . . has the burden of showing that the testimony is reliable." *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). A bedrock principle of *Daubert* is that expert testimony must be relevant such that it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 352 (5th Cir. 2007); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244-45 (5th Cir. 2002).

**A.   The Proffered Testimony is Irrelevant and Unreliable, and Likely Would Mislead the Factfinder and Unfairly Prejudice the Magness Parties.**

Post proffers opinion testimony of several kinds in support of the Receiver's argument as to the alleged "insider" status of the Magness Parties. The testimony both mirrors and relies on

similar testimony of the Receiver's expert witness Karyl Van Tassel, which is the subject of a separate Motion to Exclude or Limit. Post seeks to offer his opinions regarding (a) that "the treatment Stanford afforded to the Magness Parties was "extraordinary" and "far beyond the bounds of the normal 'perks' provided to high net worth investors." Post Decl. at 18 [App. 000029]; (b) the rate agreement SIBL offered to the Magness Parties was "highly unusual", id.; and (c) "the Magness Parties were given a unique level of access to Stanford insiders" and an "unusually high level of access to information concerning SIBL, SIBL CDs, and other Stanford Entities." Id. at 19 [App. 000030].

This proffered testimony fails both of the critical requirements of the *Daubert/Kumho* cases and the Fifth Circuit cases that have applied them: his testimony is neither relevant nor reliable. *See generally Hathaway*, 507 F.3d at 318. Moreover, that testimony is especially likely to cause unfair prejudice to the Magness Parties and to mislead the trier of fact.

Whether a defendant is an "insider" may be relevant in some fraudulent transfer cases, but it is <u>not</u> relevant in this case. "Insider" is a term that appears in certain provisions of TUFTA. Indeed, the term "insider" is specifically defined in Section 24.002(7) of TUFTA. However, this case is <u>not</u> one in which "insider" status is any part of the Receiver's claims.

Where a plaintiff seeks to prove a constructive fraudulent transfer under Section 24.006 of TUFTA, whether a challenged transfer was made to an "insider" is relevant. However, the Receiver asserts no constructive fraudulent transfer claim in this case. Instead, he claims only an actual fraudulent transfer, relying on the fact that Stanford was a Ponzi scheme.

Where alleging an actual fraudulent transfer under Section 24.005 of TUFTA, a plaintiff may allege the transfer was made "to an insider" as one factor that may show the transferor's intent to defraud. TUFTA § 24.005(b)(1). That is not an issue here, because SIBL's actual intent to defraud is deemed established by the finding that Stanford was a Ponzi scheme. The Magness

Parties do not dispute that Stanford was a Ponzi scheme, so the whether SIBL acted with fraudulent intent is not an issue in this case.

Instead, the issue here is whether the CD-secured loans SIBL made to the Magness Parties were loans the Magness Parties received in "good faith" and without actual or constructive knowledge of either the Stanford Ponzi scheme or SIBL's fraudulent intent in making the loan transfers. *See* TUFTA § 24.009(a). On this issue, the statutorily-defined "insider" term is something TUFTA does not even mention, and, therefore, that concept is irrelevant. Yet, Post's proffered testimony improperly and irrelevantly asserts that a 2005 SIBL presentation gave the Magness Parties information not available to other Stanford CD investors, thus making them "insiders" – an effort to make that irrelevant term a source of prejudicial innuendo for the factfinder. This is apparently done in the hope that the factfinder will speculate and reach erroneous and legally irrelevant conclusions as to lack of good faith, and do so in the absence of actual proof. This is precisely the kind of abuse of expert testimony that the Supreme Court intended *Daubert* and its progeny to preclude.

The potential for such testimony to confuse and mislead the factfinder is greatly enhanced here by the fact that the Magness Parties plainly do <u>not</u> qualify as "insiders" as defined in the very statute under which the Receiver asserts his claim. Under TUFTA, an "insider" with respect to a corporation like SIBL generally is defined as including officers, directors and persons controlling SIBL. *See* TUFTA § 24.002(7)(B). It is obvious and beyond dispute that none of the Magness Parties ever had any position as an officer or director of SIBL, or were in control of SIBL. Yet, Post seeks to testify in a case under TUFTA that the Magness Parties had a relationship defined by TUFTA (as an "insider") – that is both (a) irrelevant to the TUFTA claim the Receiver brought here and (b) a relationship the Magness Parties undisputedly <u>did not have</u>.

Why might a plaintiff want to import a statutorily-defined term into a claim in which that term is irrelevant? "Insider" is a term that has a sinister and pejorative connotation in common usage. Indeed, most people know that term primarily in the criminal context, and as a result of highly publicized "insider trading" prosecutions of Martha Stewart, Steven A. Cohen/SAC Capital, and others. There is no better way to unfairly tar a defendant than to suggest criminal conduct where none exists or has ever been alleged. Thus, the potential to unfairly prejudice the Magness Parties and to further the baseless innuendo on which the TUFTA claim depends would be greatly advanced if "expert" testimony to misleadingly portray the Magness Parties as "insiders" were admitted.

Expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, *quoted in Pipitone*, 288 F.3d at 244-45; *see also Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). In this case, there is no need whatsoever for "expert" testimony to support the Receiver's attempt to apply the inapplicable and pejorative label of "insider" to the Magness Parties. Witnesses are free to testify to what facts the Magness Parties actually had or did not have when they received CD-secured loans from SIBL. The parties are free to argue whether or not any such facts negate or prove the "good faith" of the Magness Parties. These are issues that factfinders can and do resolve without pejorative labels applied by pseudo-experts who effectively act as advocates.

  B.  **Post's Opinions on these Matters Are Based On Insufficient Data, No Reliable Principles or Methods, and Does Not Demonstrate A Reliable Application of Principles or Methods To This Case.**

Under Daubert, Rule 702 charges trial courts to act as 'gatekeepers', making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." In short, expert testimony is admissible only if it is relevant and reliable. The gatekeeping obligation applies to all types of expert testimony, not just scientific testimony.

*Pipitone*, 288 F.3d at 242. Although this inquiry is a flexible one, the trial court's responsibility is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id. (quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Every aspect of the expert's reasoning must be reliable: the methodology, the facts underlying the opinion, and the link between facts and conclusion. *Hathaway*, 507 F.3d at 318. Post's opinions intended to bolster the Receiver's "insider" contention fail this test.

First, Post used no recognized scientific or professional methodology in arriving at his opinion. He cites no studies, professional literature, or authority of any kind to support his assertions, and refers to no principles or standards of any discipline to support his conclusions. Instead, he primarily relies for the basis of his opinions on (a) his review of the declaration of Karyl Van Tassel in this case, Post Decl. at 19 [App. 000030], and review of unspecified "evidence I have reviewed in this case", id. at 40 [App. 000051]; (b) the fact that personally "I have never heard" of a term that SIBL offered to the Magness Parties on SIBL CD rates, id. at 19 [App. 000030]; claims that something was "common knowledge in the investment community", id. at 7 [App. 000019]; and (d) his unspecified "experience". See also Post Dep. at 166 [App. 000012] (acknowledging that Receiver's counsel provided him no information from which he could determine whether SIBL used materials similar to a presentation it purportedly used with Kim Magness's trust with other existing or prospective investors.) For example, Post claims that "treatment" Stanford afforded to the Magness Parties was "extraordinary" and "far beyond the bounds of the normal 'perks' afforded to high net worth investors," without citing any support whatsoever other than "my experience". Post Decl. at 6 [App. 000018].

Like Van Tassel, Post asserts the "conclusion that the Magness Defendants had access to information and Stanford insiders unavailable to most SIB CD investors." Post Decl. at 6 [App. 000018]. Yet Post, like Van Tassel, does not claim to have actually compared such "access" that the Magness Parties had to that afforded to other SIB CD investors, or to an appropriately selected sample thereof. These conclusions are just general impressions and assertions that the Receiver's hired witnesses improperly seek to present to the factfinder as "expert", but in reality have no basis in any professional standards or discipline.

An expert may properly refer to hearsay evidence in arriving at an opinion, but "the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *Factory Mut. Ins. Co. v. Alon,* 705 F.3d 518, 524 (5th Cir. 2013) (quoting *Loeffel Steel Prods, Inc. v. Delta Brands, Inc.*, 397 F. Supp. 2d 794, 808 (N.D. Ill. 2005)). Here, Post simply piggy-backs onto Van Tassel's unsupported assertions about what she gleaned from her review of unspecified inadmissible "Stanford records", and tops them off with his own claimed experience (or lack thereof). There is no stated or apparent professional methodology at all.

Certainly, Post's "methodology", whatever it is: (a) has not been tested and cannot be tested; (b) has not been subjected to peer review or publication; (c) has no known or even asserted rate of error; (d) has no standards by which to judge its application; and (e) has no demonstrated acceptance of the methodology in the expert community. Finally, Post - like Van Tassel - supports his opinions with general references to "my review of the records in this case", Post Decl. at 23 [App. 000034]; Post Supp. Decl. at 2 [App. 000069]. This makes it impossible to test or even assess his summary conclusions on the matters on which he opines, including, for example, what information was or was not "generally available" to SIBL CD investors. For all of

these reasons, Post's proffered opinions on these matters fail to meet the standards of Daubert and Rule 702 (among others) and must be excluded from evidence.

## II. POST'S OPINIONS IMPERMISSIBLY CONFLATE WHAT THE MAGNESS PARTIES ACTUALLY KNEW WITH WHAT POST BELIEVES THEY "SHOULD HAVE" KNOWN.

Post asserts that as of October 2008, "a reasonably prudent investor of the Magness Defendants' level of sophistication and access would have reached the conclusion that SIBL was likely engaged in a fraud." Post Decl. at 23 [App. 000034]. He attempts to support this conclusion by citing a series of what he terms "risk factors" or "red flags". Id. at 23, 26 [App. 000034; App 000037]. As in Van Tassel's testimony, most of these "red flags" are simply Post's subjective opinions as to what is "risky, unsupported by any methodology, professional standards or literature, or testing of any kind."

Thus, like Van Tassel, Post announces without support that SIBL was "operating in a lax regulatory jurisdiction" . . . in a region where countries other than Bermuda and the Cayman Islands were "well known within the investment community as havens for illegal banking activities." Id. at 23 [App. 000034]. He asserts without support that ""SIBL was run by individuals without any obvious investment expertise" and that it was "audited by a small, unknown auditor." Id. Moreover, even assuming arguendo that some or all of these assertions were true, Post makes no showing that the Magness Parties knew them as facts. As also set forth in the motion to exclude or limit Van Tassel's similar testimony, such bald assertions fail to meet the requirements of *Daubert* and must be excluded.

Post's opinions on this matter suffer from an additional set of fatal flaws. First, Post does not properly distinguish between actual access to information and theoretical potential access to information. Only the former - actual access to information - could logically be relevant to the issue in this case of whether the Magness Parties knew, or knew facts which placed them on

inquiry notice, that Stanford was a Ponzi scheme or fraud. Yet Post thoroughly mixes his assertions as to what the Magness Parties actually knew with what he claims they should (or "could" or "would") have guessed, inferred, or intuited. This failure by Post inevitably makes his opinions confusing and misleading to the factfinder in this case, and therefore inadmissible.

Even inquiry notice requires "actual knowledge . . . of facts or circumstances sufficient to put a reasonably prudent person upon inquiry, which, by the use of diligence, will lead to knowledge of the intent on the part of the transferor to delay, hinder or defraud his creditors." *Pan Am. Petroleum Corp. v. Verde Oil Co.,* 367 F.2d 461, 464 (5th Cir. 1966); *accord Templeton v .O'Cheskey (In re Am. Housing Found.)*, 785 F.3d 143, 1564 (5th Cir. 2015) (good faith analysis considers "whether the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose"). Inquiry notice is <u>not</u> a negligence standard that bases liability on a transferee's failure to know all anyone could possibly know about SIBL, but rather is triggered only when the transferee itself possesses "knowledge that would lead a reasonable, law-abiding person to inquire further – would make him in other words suspicious enough to conduct a diligent search for possible dirt." *See Grede v. Bank of New York Mellon Corp. (In re Sentinel Mgmt. Group, Inc.)*, 809 F.3d 958, 962 (7th Cir. 2016) (transferee had "in its possession documents that would show, on even a casual perusal," transferor's fraudulent purpose); *Pan Am. Petroleum*, 367 F.2d at 464 ("Mere suspicion is not sufficient, and the circumstances or facts must be such as, by the use of proper diligence, will lead to a knowledge of the fraudulent intent"); *accord, Hahn v. Love*, 394 S.W.3d 14, 32-33 (Tex. App. 2012) ("*Hahn II*") (holding transferee did not have constructive knowledge of judgment creditor's interest through judgment lien and correction deed that existed and could have been found, but was outside chain of title, such that transferee was not charged with its knowledge).

For example, Post refers to his own review of SIBL's "disclosure statements, annual and quarterly reports, and other marketing materials that he claims were "available" to the Magness Parties. He then asserts that, based on <u>his</u> experience and expertise, he finds the "claims" in the materials "should have raised serious concerns about SIBL's representations regarding the safety, liquidity, and high rate of return on the SIBL CD investment." Post Decl. at 25. Thus, Post's opinion is based on (a) his review of materials that he cannot testify or otherwise prove the Magness Parties actually read, or even had; and (b) information Post cannot testify or prove the Magness Parties actually knew. Second, that opinion is based on his own "experience and expertise", not that of the Magness Parties or of a reasonably prudent investor. Third, that opinion states a conclusion that possibly could be relevant in a case in which a negligence standard applied – but is nevertheless not relevant in this case. What Post or anyone else thinks the Magness Parties should have known or guessed or been concerned about is not relevant here – instead the issue is what the Magness Parties <u>actually</u> knew, and whether they had either (a) actual knowledge of SIBL's fraud or insolvency or (b) actual knowledge of facts so incriminating that a reasonably prudent investor would have inquired further and, through that inquiry, would have discovered SIBL's fraud or insolvency. Post never gets to those issues in his opinions.[1]

Post (and the Receiver) would like for this case to be about whether victims of fraud like the Magness Parties could theoretically have been so skeptical, suspicious, and cautious that they would not have been defrauded and victimized. With the helpful advantage of 20-20 hindsight eight years later, nearly any fraud could have been so unmasked and avoided. However, that

---

[1]  Other parts of Post's opinions similarly are based, not on what the Magness Parties <u>actually</u> knew, but on what Post claims would or should be known by "[a]n investor with the experience and expert advice available to the Magness Defendants", Post Decl. at 25-26 [App. 000036 – App. 000037]. See, e.g. id. at 26 [App. 000037] ("an investor of Mr. Magness' sophistication and/or his team of professionals should have reached the conclusion . . ."), 27 [App. 000038] ("as any investor of Magness'es sophistication should have recognized").

simply is not the applicable legal standard, and it is critically important that purported "experts" like Post not be allowed to testify in a manner that would confuse and mislead the factfinder by applying a different standard than the one that actually applies under the law.

Similarly, Post's opinions - like Van Tassel's - are based upon regulatory actions and news coverage of which there is no evidence the Magness Parties were aware. Post cites the four minor FINRA fines of Stanford Group Companies as a basis for his opinions. Post Decl. at 37 [App. 000048]. He states that, if the Magness Parties had routinely monitored the "broker check" function of the FINRA website, they could have learned of these fines. Post offers no facts to suggest the Magness Parties ever monitored the FINRA website, or ever had actual knowledge of any of the FINRA fines, or that any reasonable investor would have done so. *See Janvey v. Democratic Sen. Camp. Comm., Inc*., 793 F. Supp. 2d. 825, 836 n.12 (N. D. Tex. 2011)(rejecting defendants' attempts to establish constructive notice of the fraudulent nature of disputed transfers based on FINRA arbitration proceedings and testimony at Congressional hearings), *aff'd*, 712 F.3d 185, 196 (5th Cir. 2013).

Like Van Tassel, Post cites the July 3, 2008, Bloomberg article regarding an inquiry into the Stanford CDs. Post Decl. at 39 [App. 000050]. Post notes that Mr. Magness testified he doesn't recall knowing of that article. Id. [App. 000050] However, Post states that Stanford representative Tom Espy was aware of the article at some point and seems to suggest that Espy might have told Mr. Magness of the article. Of course, what Mr. Espy knew is irrelevant to the issues in this case unless it is shown that Espy communicated his knowledge to the Magness Parties. There is no such proof at all as to the 2008 Bloomberg article.[2] Post's speculative reliance on it in arriving at his opinions is yet another reason why his opinions are inadmissible.

---

[2] Similarly, Post grudgingly admitted that there was no evidence that the Magness Parties ever received or were otherwise aware of "questionnaires that the SEC sent in 2005 to some unspecified subset of SIB CD Investors. Post. Dep. at 102-17 [App. 000002 – App. 000011].

Post's extensive reliance on information for he has no evidence the Magness Parties ever knew, and on nothing other than what he deems concerning or dubious based on his own general "experience and expertise", makes his opinions vaporous at best. It is just such "expert" testimony – based on an insufficient factual basis, and arrived at through no recognized or tested methodology – that must be excluded from evidence under *Daubert* and its progeny.

In *Anderson v. City of McComb*, No. 3:10CV617TSL-MTP, 2012 WL 1344025 (S.D. Miss. 2012) at *9, *aff'd in part, rev'd in part on other grounds*, 539 F. App'x 385 (5th Cir. 2013), the trial court rejected a proffered opinion of a recognized expert on race and politics as to whether there was "reasonable cause" for an arrest. The court not only noted the witness's lack of expert qualifications in the specific area on which he sought to testify, but further stated:

> [E]ach opinion Dr. Orey proposes to offer as "expert" opinions either amounts to nothing more than his personal interpretation of the facts or is a legal conclusion based on his personal fact finding, neither of which is the proper subject of expert testimony.

Id. at 10 [App. 000021]. This fully and accurately describes Post's proposed testimony as to what a reasonable investor should have concluded regarding the SIBL CDs as of October 2008. Because Post offers only his personal interpretation of the facts or legal conclusions based on his personal fact-finding, that testimony should be excluded from evidence.

### III. POST'S "EXPERT" OPINION THAT THE MAGNESS PARTIES' ACTIONS ESTABLISH THAT THEY HAD CONCLUDED SIBL WAS LIKELY A FRAUD AS OF OCTOBER 2008 IS A SPECULATIVE ASSERTION HE IS ENTIRELY UNQUALIFIED TO MAKE.

Post makes the remarkable assertion that "[t]he Magness Defendants' actions establish that they had concluded that SIBL was likely a fraud before they received any of the $ 88.2 million in [loan] transfers from SIBL." Post Decl. at 40 [App. 000051]. Thus, Post presumes to opine, as an expert, what subjectively was in the mind of the Magness Parties as of the critical October 2008 date of the challenged transfers. This wildly speculative testimony is not the proper province of expert testimony at all, and Post certainly has not shown expertise in

determining the mental state of investors like the Magness Parties. He, of course, offers no methodology that could possibly meet the standards of *Daubert* for making such a determination. Post's exercise in telling the factfinder how to decide an ultimate contested fact issue is clearly inadmissible and should be excluded.

Post admits, as he must, that the Magness Parties have testified that their reason for arranging CD-secured loans from SIBL in October 2008 was to generate funds to meet sizable margin calls generated by the significant declines in stock market prices of their securities at that time, and to reduce margin debt. However, Post makes a selective and one-sided review of the facts and announces that he concludes "quite clearly in my opinion – that the Magness Defendants were motivated by a desire to mitigate their exposure to an illegitimate investment scheme." Id. at 43 [App. 000054]. He reaches that conclusion "[a]lthough it may be true that some of the SIBL withdrawals were ultimately used to satisfy margin calls or to pay down margin debt." Id. [App. 000054].

This testimony does not meet even the most basic requirements for admissible expert opinions, and plainly is not reliable or based on any recognized methodology or professional discipline. It is simply a hired witness acting as an advocate for one party's view of contested facts, and seeking to use purported "expert" status to confuse or mislead the jury into giving that advocacy a patina of authority. The Court should exclude that testimony, or any "expert" testimony regarding what was purportedly in the minds of the Magness Parties, as inadmissible in its entirety.

## CONCLUSION

In summary, Post's expert testimony fails to meet the applicable legal standards in multiple respects. It has enormous potential to unfairly prejudice the Magness Parties in the eyes of the finders of fact by inaccurately presenting a layman's arguments as if they were the reliable

and relevant findings of an expert. As the gatekeeper charged with ensuring that the *Daubert* standards set forth in many Fifth Circuit cases are followed, this Court should exclude from evidence (or at a minimum limit through rulings in limine) all of Post's opinion testimony to which the Magness Parties refer above.

          Respectfully submitted,

          */s David Bryant*
          **BALLARD SPAHR LLP**
          Andrew J. Petrie (pro hac vice)
          Lisa A. Lee (pro hac vice)
          Rachel R. Mentz (pro hac vice)
          1225 Seventeenth Street, Suite 2300
          Denver, Colorado 80202-5596
          Tel.:   303-292-2400
          Fax:   303-296-3956
          petriea@ballardspahr.com
          leela@ballardspahr.com
          mentzr@ballardspahr.com

          **DYKEMA COX SMITH**
          David Bryant
          State Bar No. 03281500
          1717 Main Street, Suite 4200
          Dallas, Texas  75270
          Tel.:  214-698-7800
          Fax:  866-809-9916

          Mark J. Barrera
          State Bar No. 24050258
          112 East Pecan Street, Suite 1800
          San Antonio, Texas  78205-1521
          Tel.:  210-554-5500
          Fax:  210-226-8395
          dbryant@dykema.com
          mbarrera@dykema.com

          ATTORNEYS FOR THE MAGNESS PARTIES

## CERTIFICATE OF SERVICE

On October 11, 2016, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court which served all counsel of record electronically as authorized by the Court pursuant to the Federal Rules of Civil Procedure.

                                              */s David Bryant*
                                              David Bryant