**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:15-CV-0401-N-BQ |
| GMAG LLC, MAGNESS SECURITIES LLC, GARY D. MAGNESS, and MANGO FIVE FAMILY, INC., IN ITS CAPACITY AS TRUSTEE FOR THE GARY D. MAGNESS IRREVOCABLE TRUST, | § § § § § § | |
| Defendants. | § § | |

---

**RECEIVER'S RENEWED MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT**

---

**BAKER BOTTS L.L.P.**

Kevin M. Sadler
Scott D. Powers
Texas Bar No. 24027746
scott.powers@bakerbotts.com
Brendan A. Day
Texas Bar No. 24052298
brendan.day@bakerbotts.com
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701-4039
(512) 322-2500
(512) 322-2501 (Facsimile)

Timothy S. Durst
Texas Bar No. 00786924
tim.durst@bakerbotts.com
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500
(214) 953-6503 (Facsimile)

**ATTORNEYS FOR RECEIVER RALPH S. JANVEY**

# TABLE OF CONTENTS

Index of Authorities ............................................................................................................. iii

Introduction ........................................................................................................................... 1

Procedural History ................................................................................................................. 1

Renewed Motion for Entry of Judgment as a Matter of Law ........................................... 5

Legal Standard ....................................................................................................................... 5

Argument ................................................................................................................................ 6

      I.     The Receiver is entitled to judgment because the Magness Defendants are estopped from contesting notice of the fraudulent nature of the transfers and because the evidence conclusively establishes their lack of good faith. .......... 6

           A.     As a matter of law and fact, the Magness Defendants are estopped from contesting notice of the fraudulent nature of the transfers. ................ 7

           B.     No reasonable jury could conclude from the evidence that the Magness Defendants did not have inquiry notice in taking the transfers. .............................................................................................. 11

      II.    The Receiver is entitled to judgment because the jury finding of inquiry notice conclusively establishes that the Magness Defendants did not take with good faith. ....................................................................................... 13

Conclusion & Prayer............................................................................................................. 16

Certificate of Service ........................................................................................................... 18

# INDEX OF AUTHORITIES

**Page(s)**

## CASES

*Brennan's Inc. v. Dickie Brennan & Co.*,
376 F.3d 356 (5th Cir. 2004) ............................................................5

*DeRosa v. Nat'l Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010)..............................................................8

*GE Capital Commercial, Inc. v. Worthington Nat'l Bank*,
754 F.3d 297 (5th Cir. 2014) ....................................................6, 13

*Hahn v. Love*,
321 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)................................6, 13

*In re Davidson*,
947 F.2d 1294 (5th Cir. 1991) ...................................................8, 10

*In re Wren Alexander Invs., LLC*,
530 F. App'x 302 (5th Cir. 2013) ...................................................6

*Jacobs v. Tapscott*,
516 F. Supp. 2d 639 (N.D. Tex. 2007) .........................................5

*Janvey v. Brown*,
767 F.3d 430 (5th Cir. 2014) ....................................................2, 13

*Janvey v. Suarez*,
978 F. Supp. 2d 685 (N.D. Tex. 2013) .........................................14

## STATUTE AND RULES

TEX. BUS. & COM. CODE §§ 24.008(a), .009(a) .............................6

FED. R. CIV. P. 50(a)(1)....................................................................5

FED. R. CIV. P. 50(b)........................................................................5

## OTHER AUTHORITIES

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—
Business, Consumer, Insurance & Employment PJC 105.29 (2016 ed.) ...........................6, 14

## INTRODUCTION

The Receiver is entitled to judgment as a matter of law on his fraudulent-transfer claim. First, the record reflects that the Magness Defendants made admissions in tax filings that conclusively establish they had actual notice of the fraudulent nature of the $88.2 million in transfers they received from Stanford International Bank, Ltd. ("SIB") at the time of the transfers. In any event, the Magness Defendants are conclusively estopped from asserting otherwise. Accordingly, judgment in favor of the Receiver is the only just result.

The Receiver is also entitled to judgment as a matter of law because the jury found that the Magness Defendants were on inquiry notice at the time of the transfers that Stanford was engaged in a Ponzi scheme—a finding supported by the evidence and testimony from the Magness Defendants' own witnesses. The jury's finding regarding the "futility" of an investigation should be disregarded because under law there is no futility exception to good faith and because even if there was, the evidence from the Magness Defendants' own witnesses conclusively established that an investigation would not have been futile. The so-called futility defense was irrelevant for the additional reason that it was undisputed that the Magness Defendants undertook no investigation at or near the time they orchestrated their sham loans from SIB in October 2008. There is simply no legal authority for the proposition that a party on inquiry notice is excused from conducting any investigation at all and can claim good faith while simply ignoring red flags of fraud.

## PROCEDURAL HISTORY

The Receiver initially sued the Magness Defendants (along with several other SIB CD investors) in July 2009 in the *Janvey v. Alguire, et al.* lawsuit. [*See* Docs. 21, 21-1 (the Receiver's original claims against the Magness Defendants).] In December 2009, the Receiver amended his complaint to assert fraudulent-transfer and, in the alternative, unjust-enrichment

claims. [*See* Docs. 3, 4 (Receiver's First Amended Complaint against the Magness Defendants).]

In June 2011, the Receiver filed a motion for partial summary judgment in the *Alguire* lawsuit concerning the Magness Defendants' (and numerous other investors') "net winnings"—that is, the $8,515,957.14 in funds that the Magness Defendants received in excess of the amounts they invested in SIB. [*See* Docs. 21-22 through 21-27 (Receiver's motion, brief, and supporting appendix).] On January 22, 2013, the Court granted the Receiver's motion for partial summary judgment against the Magness Defendants in the full amount of their net winnings. [*See* Doc. 22-21 (Order of Partial Summary Judgment).]

The Magness Defendants then appealed the Court's entry of partial summary judgment, and the Fifth Circuit affirmed the Court's award. *See Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014). Although the Receiver's claims against the Magness Defendants were ultimately severed from the original *Alguire* lawsuit into the instant case, [*see* Doc. 2 (Severance Order)], the Fifth Circuit's holding in *Brown* remains binding law of the case. And following the severance, the Magness Defendants in fact returned all of their net winnings to the Receiver pursuant to the Court's partial summary-judgment order and the *Brown* opinion. [*See* Doc. 225 at 6, n.1 (Joint Pretrial Order).]

In August 2016, the Receiver moved for partial summary judgment on his fraudulent-transfer claim, seeking a ruling that that the remaining amounts at issue were fraudulent transfers as a matter of law. [Doc. 90.] The Magness Defendants also moved for summary judgment, seeking entry of judgment in their favor on both their good-faith defense and the Receiver's unjust-enrichment claims. [Doc. 123.] On December 21, 2016, the Court granted the Receiver's motion and denied the Magness Defendants' motion. [Doc. 196.] The same day,

the Court issued its Order in *Janvey v. Alguire*, Case No. 3:09-CV-0724-N, outlining its interpretation of the test for good faith under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). [*See* Order [1465] at 16, in *Janvey v. Alguire*, Case No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009) ("*Alguire* Order").]

At the pretrial conference held on January 5, 2017, the Court *sua sponte* reconsidered its summary-judgment ruling on the Receiver's unjust-enrichment claim and granted the Magness Defendants request to dismiss that claim. [Ex. A, Pretrial Conf. Tr. at 4:18-6:14, App. at 5-7.] The Court also granted the Magness Defendants' motion to reorder trial presentation, allowing them to present their case first. [*Id.* at 7:15-21, App. at 8.] The case proceeded to trial on January 9, 2017 on the sole issue of whether the Magness Defendants received the $88.2 million in fraudulent transfers in good faith.

At the close of the Magness Defendants' case-in-chief, the Receiver moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing both that the Magness Defendants are estopped from asserting that they took the transfers at issue in good faith based on statements made to the IRS regarding the transfers and that no reasonable jury could conclude that the Magness Defendants established their good-faith defense. [Doc. 243.] The Receiver formally reasserted those arguments at the close of his case-in-chief. [*See* Doc. 251.]

After closing arguments, the Court submitted its jury charge, instructing that "[t]he Magness Parties acted in good faith if they did not have actual notice or inquiry notice in October 2008 that Stanford was engaged in a Ponzi scheme," and to answer "Yes" or "No" for "no actual notice" (Question No. 1.a) and for "no inquiry notice" (Question No. 1.b). [Doc. 256 at 7.] If the answers to those questions were, respectively, "Yes" and "No," the jury charge

asked, "Would an investigation have been futile?" [*Id.* at 9.]  The jury charge provided that "[a]n investigation would have been futile if a diligent inquiry would not have revealed to a reasonable person that Stanford was running a Ponzi scheme" and that "[t]o establish futility the Magness Parties are not required to prove that they actually conducted a diligent inquiry." [*Id.*]

In verbal instructions to the jury not present in the Court's written instructions, the Court acknowledged that the jury charge's formulation of the good-faith question was confusing and that neither the Receiver nor the Magness Parties approved of it. [Ex. H, Trial Tr. (Vol. 7) at 6:17-20, App. at 1357.]  The Court twice instructed the jury that, if it was confused by the negative phrasing of Questions No. 1.a and 1.b regarding notice, the Magness Defendants were "looking for a yes" and "the Receiver is looking for a no." [*Id.* at 6:21-7:12, App. at 1357-58.]

On January 18, 2017, the jury returned its verdict, answering "Yes" to "no actual notice"; "No" to "no inquiry notice"; and "Yes" to whether an investigation have been futile. [Doc. 256 at 7, 9; Doc. 257.]  The Receiver filed his Motion for Entry of Judgment on January 25, 2017, arguing that the Court should enter judgment in favor of the Receiver on the verdict based on the jury's finding that the Magness Defendants were on inquiry notice. [Doc. 260; *see also* Doc. 262 (Receiver's Reply in Support); Doc. 263 (Receiver's Notice of Supplemental Authority).]

In its Order issued September 14, 2017, the Court denied the Receiver's motions for judgment as a matter of law and motion for entry of judgment. [Doc. 268.]  The Court entered its Final Judgment, dismissing the Receiver's claims with prejudice and ordering that the Receiver take nothing by his claims against the Magness Defendants. [Doc. 269.]

## RENEWED MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW

For the reasons set forth in his motions for judgment as a matter of law, his motion for entry of judgment, and his briefing in support of those motions,[1] and as further argued here, the Receiver requests that the Court enter judgment for the Receiver on his fraudulent-transfer claim under Federal Rule of Civil Procedure 50(b).

## LEGAL STANDARD

A party that has moved for judgment as a matter of law under Rule 50(a) may file a renewed motion for judgment as a matter of law within 28 days of entry of the judgment.  FED. R. CIV. P. 50(b).  "In ruling on the renewed motion, the court may . . . allow judgment on the verdict . . . [or] direct the entry of judgment as a matter of law."  *Id.*

A trial court should award judgment as a matter of law whenever "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of one party.  FED. R. CIV. P. 50(a)(1).  "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict."  *Jacobs v. Tapscott*, 516 F. Supp. 2d 639, 643 (N.D. Tex. 2007) (quoting *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004)).  In ruling on the motion, the court must consider all of the evidence in the record; it must not make credibility determinations or weigh the evidence.  *Jacobs*, 516 F. Supp. 2d at 643.  The Court should credit "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses."  *Id.*  (citation and quotation omitted).

---

[1] Rather than repeating all of the arguments in the motions for entry of judgment as a matter of law and the motion for entry of judgment, the Receiver summarizes those arguments in this brief.  By summarizing rather than repeating, the Receiver does not intend to waive any of the arguments or his reliance on any of the evidence cited in the prior motions.

ARGUMENT

**I.     The Receiver is entitled to judgment because the Magness Defendants are estopped from contesting notice of the fraudulent nature of the transfers and because the evidence conclusively establishes their lack of good faith.**

Because the Court correctly concluded, and the parties stipulated for trial, that the $88.2 million in transfers the Magness Defendants received from SIB were fraudulent as a matter of law, [*see* Order, Doc. 196; Doc. 225 at 13-14 (Pretrial Order)], those transfers are avoidable under TUFTA and the Receiver is entitled to judgment unless the Magness Defendants proved that they took the transfers in good faith.   TEX. BUS. & COM. CODE § 24.008(a) (allowing avoidance of fraudulent transfer); *id* § 24.009(a) (providing defense where transferee took in good faith and for reasonably equivalent value).

To determine whether a party has established its good-faith defense under TUFTA, the Fifth Circuit applies the standard articulated in *Hahn v. Love*:

> A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser.

321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 313 (5th Cir. 2014) (adopting *Hahn*). The Fifth Circuit explained that "[b]ecause *Hahn* is the most thorough and well-reasoned Texas case applying TUFTA's 'good faith' defense, and because its objective definition of 'good faith' accords with numerous other persuasive authorities, we predict that the Supreme Court of Texas would adopt *Hahn*'s approach if presented with the question."  *GE Capital*, 754 F.3d at 313; *accord In re Wren Alexander Invs., LLC*, 530 F. App'x 302, 306-07 (5th Cir. 2013).   This assessment has received further and more recent support, because the current Texas Pattern Jury Charge is based on *Hahn* and *GE Capital*.  *See* COMM. ON PATTERN JURY CHARGES, STATE BAR

of Tex., Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment PJC 105.29 (2016 ed.).

A.   **As a matter of law and fact, the Magness Defendants are estopped from contesting notice of the fraudulent nature of the transfers.**

The trial evidence shows that the Magness Defendants admitted in two separate tax returns, both signed under penalty of perjury, that:

> In October 2008, Taxpayer received funds from Stanford as a loan secured by [their SIB] CDs. **Due to the investigation of Stanford which was active in 2008, the Taxpayer was concerned that his CD principal was in jeopardy.** Stanford agreed to apply outstanding accrued CD interest . . . to pay off the loan.

[Ex. I, PX 482, App. at 1429 (IRS Form 8275, Part IV) (emphasis added); Ex. J, PX 483, App. at 1435 (same); *see* Ex. C, Trial Tr. (Vol. 2) at 60:23-61:18, 186:9-187:16, 188:23-189:5, App. at 99-100, 225-28 (Magness Testimony).]   The loans that are described in these tax returns as having been paid off are the $25 million in loans that the Magness Defendants took on October 13, 2008.  [Ex. I, App. at 1429 (stating approximately $15.5 million set off); Ex. J, App. at 1435 (stating approximately $8.8 million set off); Ex. G, Trial Tr. (Vol. 6) at 195:14-198:2, App. at 1289-98 (Van Tassel testimony: discussing timing of $25 million loan repayment as having occurred on October 13, 2008); Ex. G at 211:13-213:12, App. at 1305-07 (Van Tassel testimony: identifying the loan repayments in the tax returns as being the same as the $25 million loan repayments).]   And it was undisputed that these particular loans were treated by Stanford as having been paid off by October 20, 2008.  [Ex. K, PX 081, App. at 1437-39 (October 14, 2008 letters requesting setoff); Ex. L, PX 093, App. at 1441 (October 21, 2008 Tonya Dokken emails identifying amounts set off by account); *see* Ex. C at 50:7-51:11, 149:19-150:8, 190:2-7, 196:6-16, App. at 89, 188-89, 229, 235 (Magness Testimony); Ex. G at 197:11-198:2, 212:17-213:12, App. at 1291-92, 1306-07 (Van Tassel testimony).]   In fact, the payoff of the loans was what

allowed the Magness Defendants to take the second set of loans in October 2008.  [*See* Ex. L, App. at 1441 (statement from Tonya Dokken that payoff of the $25 million loan was necessary for the $44 million loan to be permitted).]  Accordingly, it is beyond question that the Magness Defendants believed in October 2008 that their SIB CD investment was "in jeopardy" "due to the investigation of Stanford that was active in 2008."  It is also undisputed that there was in fact an SEC investigation of Stanford that was active in 2008, and that the investigation was publicly disclosed.  [Ex. M, PX 0065, App. at 144 (July 3, 2008 Bloomberg article).]

Gary Magness admitted that the purpose of the statements in his tax returns was to avoid paying taxes on the $25 million he received from Stanford in October 2008.  [Ex. C at 190:8-25, 193:6-15, 197:10-25, App. at 229, 232, 236 (Magness Testimony).]  Mr. Magness also admitted that the IRS accepted his characterization of the events as described in his tax returns. [*See* Ex. C at 187:2-5, 188:23-189:2, 193:6-15, 197:23-25, 231:6-10, App. at 226-28, 232, 236, 207.]

As set forth in the Receiver's Rule 50(a) motion, the Magness Defendants are estopped from disputing the only things that actually matter in this case—that they were aware in October 2008 that Stanford was under investigation and that they arranged the transfers because they were concerned their investment was in jeopardy.  [Doc. 243 at 5-10.]  The Fifth Circuit and other courts have long recognized that under applicable estoppel doctrines, a party is bound to a position or representation made under oath to a government agency (*e.g.*, in tax returns to the IRS) where the party receives the resulting benefits of that position or statement.  *See, e.g.*, *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991) (holding that litigant was bound to the position that certain payments were alimony payments where he took tax deductions based on their characterization as alimony); *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)

("Judicial estoppel applies to sworn statements made to administrative agencies such as the Social Security Administration as well as to courts.").

In denying the Receiver's Rule 50(a) motion, the Court stated that it is reasonable to conclude that the statements in the tax forms do not contradict the Magness Defendants' good-faith defense in October 2008 because the statements were made in 2009 and because Tom Espy testified that his concerns arose in December 2008.  [Doc. 268 at 2-3.]  But neither issue is relevant to the Receiver's estoppel argument.  It is beyond dispute that the tax returns are describing the Magness Defendants' state of mind in October 2008.  If the Court is suggesting that the tax returns may not reflect an accurate recollection considering that the statements were made a year after the events in question, then that misses the point of the estoppel argument.  The salient issue is that the Magness Defendants' convinced the IRS in 2009 of what their state of mind was in October 2008.  Whether that characterization was accurate or not is irrelevant; the point is that they are bound by it.

Regarding Mr. Espy's recollections, they are irrelevant.  The tax returns reflect the Magness Defendants' position regarding their own state of mind.  Indeed, they were signed by Gary Magness—not Tom Espy.  [*See* Ex. C at 187:2-5, 190:13-19, 194:16-195:18, App. at 233-34 (Gary Magness admitting that he signed both tax returns, PX 482 and PX 483, under oath).]  Even if one were to credit that Mr. Espy's recollections of his own state of mind were accurate, they are legally irrelevant to the question before the Court, which is what position Gary Magness and the other Magness Defendants took before the IRS.  And the only plausible reading of the statements made to the IRS is that the Magness Defendants' were concerned in October 2008 that their CD principle was "in jeopardy" due to the ongoing investigation of Stanford.

The Court also determined that the statements in the tax returns do not establish as a matter of law that the Magness Defendants lacked good faith.  But the Magness Defendants' sworn statements in the tax returns are diametrically opposed to their present claim that they received the loans without any actual or constructive notice of SIB's insolvency or the fraudulent nature of the transfers.  If estoppel was warranted in *Davidson*, as the Fifth Circuit found, it must be even more clearly warranted here.  To now allow the Magness Defendants to maintain their good-faith defense and assert, as they attempt to do, that they were utterly unaware of the nature of the transfers that they purposefully solicited due to their concern that their investments were in jeopardy would allow the Magness Defendants to benefit from their dishonesty while unfairly depriving the Receiver and the SIB creditors of the rightful recovery of funds.  *See, e.g.*, *Reed*, 650 F.3d at 573-74; *In re Davidson*, 947 F.2d at 1297.

Moreover, the Court's conclusion assumes there was some evidence to support a good-faith finding in the event the Court were to invoke estoppel, as it should have done.  The Magness Defendants claimed they lacked actual knowledge based on their testimony that, as of October 2008, they were in fact not at all concerned that their CD investments were in jeopardy. [Ex. C at 184:13-18, App. at 233 (Magness testimony that, until December 2008, he felt "real confident about the bank," was not "worried about the bank", and "had no idea anything was wrong"); Ex. D Trial Tr. (Vol. 3) at 228:10-13, App. at 528 (Knudson Testimony that "[i]n October of 2008, we didn't have any concerns about Stanford").]  If the Magness Defendants were estopped to deny their concern in October 2008, there is *no other evidence* to support their

claim of lack of actual notice.  And unquestionably, the Magness Defendants bore the burden of proof on that issue.[2]

Regardless, the tax returns cannot reasonably be construed as anything except an admission that the Magness Defendants were concerned about SIB in October 2008 and for that reason arranged to withdraw as much money from SIB however they could.  The Magness Defendants made these statements purposefully in order to seek a tax benefit, and they are now estopped from asserting otherwise.  *In re Davidson*, 947 F.2d at 1297.  The *whole point* of estoppel doctrine is to foreclose just this sort of argument: "I'm telling the truth now, so please ignore my prior statements to the contrary, even though I derived great benefit from making them."  The Magness Defendants' good-faith defense thus fails as a matter of law under the test set forth in *Hahn* and adopted in *GE Capital*, and the Receiver is entitled to judgment.

### B.  No reasonable jury could conclude from the evidence that the Magness Defendants did not have inquiry notice in taking the transfers.

As set forth in the Receiver's motions for judgment as a matter of law, the evidence presented at trial conclusively shows that the Magness Defendants were aware of facts in October 2008 that put them on inquiry notice regarding SIB and the fraudulent nature of the transfers.  [Doc. 243 at 10-15; Doc. 251 at 2-3.]  Thus, regardless of any problems with the jury charge, as further discussed in the Receiver's motion for new trial, the Receiver was entitled to judgment on the good faith defense because no reasonable jury could have concluded that the Magness Defendants had satisfied their burden to show they were not on inquiry notice of the fraudulent nature of the transfers they received.

---

[2] As for inquiry notice, the Magness Defendants' statement to the IRS is an outright admission that they were on inquiry notice of the fraudulent transfer.  Accordingly, independent of the jury finding in favor of the Receiver on that issue, the estoppel issue means that the Receiver would have been entitled to a determination by the Court that the Magness Defendants were on inquiry notice.

In addition to the Magness Defendants' admission in the tax returns that they were "concerned [their] CD principal was in jeopardy," discussed above, the evidence shows that:

- In publications available to the Magness Defendants, SIB claimed unrealistic and uncannily consistent returns and incredible growth, even during times of historic tumult in the financial world. [*See* Doc. 243 at 13; *see, e.g.*, Ex. N, PX 474, App. at 1447-50 (SIB Quarterly Update, 4/1/08-6/30/08); Ex. O, PX 492 App. at 1452-67 (SIB Brochure); Ex. P, PX 70, App. at 1469 (email from Espy to Dokken forwarding SIB email boasting that SIB experienced historically large growth and "increase in total assets" in spite of "turbulent world economic conditions, falling markets and unending news of collapsing financial institutions" ).]

- Through Tom Espy, the Magness Defendants had high level of access to information about SIB directly from top SIB officers, including SIB President Juan Rodriguez Tolentino. [*See* Doc. 243 at 12-13 (citing meeting minutes and Magness testimony).]   Mr. Tolentino personally reported to the Magness Defendants that SIB "resembles a Swiss bank model" and made various statements that were inconsistent with SIB's public statements. [*See id.*]   The Magness Defendants admitted that Mr. Tolentino's report was inconsistent and that they did not gain any understanding from it.   [*See id.* (citing Magness and Dokken testimony).]

- As early as July 2008, it was public knowledge that the SEC was investigating SIB in connection with its sale of CDs after former SIB employees accused it of illegal activities, including providing false historical performance data.   [*Id.* at 14; Ex. M, App. at 144.]

In light of these facts, it is unsurprising that the Magness Defendants recognized SIB as a risky investment, actually were suspicious of SIB long before the transfers at issue, and that their suspicions only grew as they received more information.  [*See, e.g.*, Ex. C at 255:8-13, 258:2-6, App. at 294-97 (Dokken testimony that banks would not accept SIB CDs as collateral because they were offshore investments); Ex. D at 21:12-22:7, 81:2-9, App. at 321-22, 381 (Dokken testimony that she was concerned about SIB from the outset and that the Magness Defendants remained concerned until they received the transfers); Ex. E, Trial Tr. (Vol. 4) at 14:12-15:10, App. at 565-66 (Wilk Testimony that SIB CDs were inherently riskier than typical CDs); Ex. E at 155:12-17, App. at 706 (Bell Testimony).]

Though Gary Magness and others may self-servingly claim that they were not actually aware of the available information or that they did not consider the information they received to be particularly suspicious, their claimed subjective awareness of, understanding of, and reaction to the information available to them is altogether irrelevant to the question of inquiry notice, which focuses on objective knowledge rather than subjective knowledge. *See GE Capital*, 754 F.3d at 312.

Given the evidence, a reasonable jury could reach only one conclusion—that the Magness Defendants took the transfers with knowledge of facts that at the very least should have raised their suspicions and put them on inquiry notice that SIB was insolvent and that the transfers were fraudulent. *See GE Capital*, 754 F.3d at 313. The Receiver was thus entitled to judgment on the good-faith defense because of the Magness Defendants' inquiry notice, independent of any determination by the jury on that issue.

## II. The Receiver is entitled to judgment because the jury finding of inquiry notice conclusively establishes that the Magness Defendants did not take with good faith.

The jury answered "No" when asked whether the Magness Defendants had "no inquiry notice." [Doc. 256 at 7 (answer to Question No. 1.b).] Under the instructions provided in the jury charge, this answer amounts to a finding that at the time of the transfers, the Magness Defendants had "knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate" not only that the transfers were fraudulent, but more specifically that "Stanford was engaged in a Ponzi scheme." [*See id.*] Based on the overwhelming evidence presented at trial, discussed above, this finding of inquiry notice is the only correct result the jury could have reached.

Further, as discussed in the Receiver's Motion for Entry of Judgment and Reply in Support, this finding conclusively and correctly rejects the Magness Defendants' attempt to

prove their good-faith defense under the controlling test as set forth in *Hahn* and adopted in *GE Capital*. [*See* Doc. 260; Doc. 262.]   As this Court and the Fifth Circuit have repeatedly recognized, all transfers from a Ponzi scheme are presumptively fraudulent. *See, e.g.*, *Brown*, 767 F.3d at 439; *Janvey v. Suarez*, 978 F. Supp. 2d 685, 695 (N.D. Tex. 2013).   Because the Magness Defendants were found to have "knowledge of facts relating to the transaction at issue that would have excited the suspicions of a reasonable person and led that person to investigate" whether Stanford was engaged in a Ponzi scheme, [*see* Doc. 256 at 7], they necessarily were on inquiry notice that SIB was insolvent and that the transfers were fraudulent.   Under *Hahn*, the result is that the Magness Defendants did not take the transfers in good faith.   *See* 321 S.W.3d at 527 ("A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith . . . .").

In denying the jury's finding that an investigation would have been futile is legally irrelevant; the question plays no meaningful role in determining a proper judgment.   As discussed in the Receiver's Notice of Supplemental Authority, [Doc. 263], the Texas Pattern Jury Charge for good faith under TUFTA is based directly on the *Hahn* standard and contains no reference to any futility exception.   *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment PJC 105.29 (2016 ed.).

In denying the Receiver's Motion for Judgment, the Court stated that it would not reconsider the test it adopted in the *Alguire* Order, under which a transferee who is on inquiry notice can nonetheless establish a good-faith defense by showing that an investigation would not have led to the fraud's discovery.   [Doc. 268 at 4; *see* Doc. 1465 in *Alguire*.]   But as discussed in

the Receiver's Reply in Support of his Motion for Judgment, the two-step analysis adopted in the *Alguire* Order is based on case law interpreting the Bankruptcy Code, not TUFTA. The consideration of whether a hypothetical inquiry would have actually revealed the fraudulent purpose of the transfer has no basis in the text of TUFTA or Fifth Circuit precedent, is contrary to the Texas Pattern Jury Charge, and is irrelevant to a transferee's state of mind. It is illogical and contrary to the TUFTA's purpose to allow that determination to cancel out the fact that the transferee was on inquiry notice. [*See* Doc. 262 at 3-6.] The theoretical "futility" of doing the right thing does not convert the *failure* to have acted in good faith—in this case, the failure to conduct *any* investigation in spite of inquiry notice—into good faith itself. But *actual good faith* is what TUFTA demands and what the Magness Defendants definitively lacked. Finally, the Court's decision in Alguire was reached before release of the Texas Pattern Jury Charge on TUFTA claims, which charge omits any reference to any so-called futility defense.

To be clear, even under the test adopted in the *Alguire* Order, the jury's finding regarding futility is legally irrelevant. Under the *Alguire* Order, the Magness Defendants still would have to prove that they could not have discovered that Stanford was insolvent or that the transfers were made with a fraudulent purpose. [*See* Doc. 1465 in *Alguire* at 8.] The jury charge instructed that an investigation would have been futile if it would not have revealed the specific fact "that Stanford was running a Ponzi scheme." [Doc. 256 at 9.] As discussed in the Receiver's reply in support of his motion for judgment, the jury's finding that an investigation would not have revealed that Stanford was running a Ponzi scheme does not answer whether an investigation would have revealed the more general facts that SIB was insolvent or engaged in a fraud (*e.g.*, covering up Stanford's liquidity problems or misrepresentations regarding its investment portfolio). [*See* Doc. 262 at 6-8.]

Even if, contrary to binding precedent, the futility question submitted to the jury had any legal relevance, the jury finding that an investigation would have been futile is unsupported by the evidence.  Not only could the Magness Defendants bring forth no evidence to satisfy the Court's standard, but the evidence is undisputed that the Magness Defendants themselves were able to identify Stanford as a potential Ponzi scheme concluded that Stanford was a fraud before the SEC filed its lawsuit against Stanford.  [*See* Ex. E, 170:6-19, 173:6-25, App. at 721, 724 (Magness Defendant financial advisor Ryan Bell reviewing PX 109 and acknowledging that, in communications with Magness Defendants, he used Ponzi scheme in reference to article about Stanford International Bank despite article not using that term and SEC lawsuit not having been filed); Ex. D at 95:13-24, App. at 395 (Magness Defendants' CFO Tonya Dokken acknowledging that financial advisors questioned whether Stanford was a Ponzi scheme and connecting Magness's pre-SEC lawsuit attempted withdrawals with Magness's awareness of the term Ponzi scheme); Ex. D at 212:13-213:16, App. at 512-13 (Vice President of Mango Five Family, Inc., Steve Knudson, admitting concern that Stanford was a Ponzi scheme in January 2009, the month before the SEC filed its lawsuit).]

Because the jury finding of inquiry notice defeats the Magness Defendants' good-faith defense, the Receiver is entitled to judgment on the full amount of his claim.

## CONCLUSION & PRAYER

For the foregoing reasons and for all other reasons discussed in the Receiver's briefs concerning his prior Rule 50(a), 50(b), and 58 motions, [*see* Docs. 243, 251, 260, 262, 263], the Receiver requests that the Court enter judgment for the Receiver on his fraudulent-transfer claim against the Magness Defendants.  The Receiver also requests such other and further relief to which he may be justly entitled.

Dated:  October 12, 2017

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By:  */s/ Kevin M. Sadler*
      Kevin M. Sadler
      Texas Bar No. 17512450
      kevin.sadler@bakerbotts.com
      Scott D. Powers
      Texas Bar No. 24027746
      scott.powers@bakerbotts.com
      Brendan A. Day
      Texas Bar No. 24052298
      brendan.day@bakerbotts.com
      98 San Jacinto Blvd., Suite 1500
      Austin, Texas 78701-4039
      (512) 322-2500
      (512) 322-2501 (Facsimile)

      Timothy S. Durst
      Texas Bar No. 00786924
      tim.durst@bakerbotts.com
      2001 Ross Avenue
      Dallas, Texas 75201
      (214) 953-6500
      (214) 953-6503 (Facsimile)

**ATTORNEYS FOR
RECEIVER RALPH S. JANVEY**

## CERTIFICATE OF SERVICE

On October 12, 2017, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I will serve all parties, through their counsel of record, electronically, or by other means authorized by the Court or the Federal Rules of Civil Procedure.

By:  /s/ Kevin M. Sadler
Kevin M. Sadler